**BLOOMFIELD LAW GROUP, INC.**
 **A Professional Corporation**
Neil Jon Bloomfield, Esq. (State Bar No. 052235)
901 E Street, Suite 100
San Rafael, CA  94901
Telephone: (415) 454-2294
Facsimile: (415) 457-5348

Attorney for Plaintiff Nader Shaterian

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADER SHATERIAN, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO BANK, NATIONAL ASSOCIATION;  CAL-WESTERN RECONVEYANCE CORPORATION; and DOES 1-50, Inclusive <br><br> Defendants. | CASE NO.  C11-00920-SC <br><br> **DECLARATION OF PLAINTIFF NADER SHATERIAN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RESTRAINING THREATENED AND SCHEDULED FORECLOSURE SALE** <br><br> Date:   May 13, 2011 <br> Time:   10:00 a.m. <br> **Courtroom 1** |

Nader Shaterian declares and says:

1. I am the Plaintiff in this action.

2. I am the owner of 511 Browning Court, Mill Valley, CA, Assessor's Parcel Number: **049-093-21** [hereinafter, "my property"].

3. Attached hereto as **Exhibit A** and **Exhibit B**, respectively, are true and correct copies of the "Notice of Default" and "Notice of Trustee's Sale" for my property.  The sale was originally set for February 1, 2011.  My attorney was able to get a short postponement, but the sale has been re-scheduled, and unless

enjoined, my home will be sold out from under me on **Friday, May 20, 2011, at 3:00 p.m.**

4. The facts in this case are set forth in my Verified Complaint, filed in the State Court action, which was part of the record removed to this Court, (and attached as Exhibit A to Defendant Wells Fargo's Notice of Removal). All of the facts in that Complaint are turn and correct, as I've previously sworn thereto, and I incorporate that document and all the statements in it herein by this reference as though set forth at length herein.

5. The company purportedly holding the sale, which is defendant Cal-Western, was never appointed by or approved by me. In fact, they seem to have appointed themselves. While World Savings may have had a right to change trustees, the present trustee change was done by the trustee themselves, purporting to be agent for World, Wachovia and Wells. Nothing is recorded that I am aware of authorizing this company to act which is actually signed by Wells, or Wachovia, or World, and thus I do not believe they are a proper trustee. But if allowed to act, they will cloud and take away title to my home. A copy of the purported Substitution of Trustee, signed by Cal-Western only and purporting to appoint Cal-Western as a new trustee, is attached hereto as **Exhibit C**. The only trustee of record prior to that as far as I know was the original trustee, who has not issued a notice of default or a notice of sale to the best of my knowledge.

6. The loan to me is a completely confusing loan that was never explained adequately to me prior to the loan funding and recording. I now know it is a predatory loan, known as a "Pick a Payment" loan, but I did not know it at the time I took it out. I could never qualify for the true payments at the true interest rate, so that I was put in a trap that I could not get out of by this loan. I was "qualified' based on a misrepresented interest rate and "introductory" payments that were not my true payments and only covered a portion of what was actually due.

///

DECLARATION OF NADER SHATERIAN IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST THREATENED FORECLOSURE SALE

7. Apparently two large California lawsuits have recently established that there are numerous victims like me, and procedures are just now being set up to rectify these wrongs. However, I have not yet been offered these benefits, and some of them do not take effect for another several months. Two articles showing that then Attorney General Brown obtained $2 billion in benefits for people like me in new loans to replace the faulty ones are attached hereto as **Exhibit D**. The second lawsuit is a pending class action settlement in which $50,000,000 is funded for one group of victims and other groups, like me, are to be offered new loans on a very complicated "waterfall" basis. (I have highlighted two important provisions of that settlement at pages 4 and 5.) Although I have been asking for a loan modification for years, no representative of defendants has offered me the settlement benefits yet. I am asking the Court to stay my foreclosure sale until I can demonstrate that I have suffered the same harm, and recover the benefits, including a new loan, that I can qualify for, either through the pending two settlements or otherwise by proving my damages in this case.

8. Back in 2007 when I was looking for this loan, I contacted Diablo Funding Group ("Diablo") to re-finance my home. This was primarily in order to draw out equity so that I could finish needed improvements to my property, and pay for the improvements already in progress. Since purchasing the property four years earlier, I had discovered it was sliding down its hill, and I needed to build two 14' by 100' retaining walls, at a cost of about $300,000. I had started the construction with my own funds, but needed the new loan to finish and to replenish my capital from the construction outlays.

9. I worked with Juanita Apodaca from Diablo to get new financing. She sold me on a World Savings Bank, FSB, ("World") loan, and took care of all the documentation for the loan – working hand-in-hand with World. I completed a

///

DECLARATION OF NADER SHATERIAN IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST THREATENED FORECLOSURE SALE

Loan Application, and provided her copies of all my income and expense information including W-2's and tax returns.

10. Ms. Apodaca represented to me that the loan I was applying for was a one-year fixed rate – of approximately 6% - but that after the first year it would become adjustable, and could adjust <u>downward</u> to the then-current interest rate. This was very attractive to me, and sold me on the loan. I knew that the first year might be a stretch, at 6%, but interest rates were going down and I anticipated my payment descending over time. However, my payments did not go down, they went up, and my interest rate was not 6% as represented. I was deceived.

11. When it was time to sign the closing documents, they were presented to me with significant items blank. My ex-wife had to sign certain documents as well and her documents had significant blanks as well. Ms. Apodaca told me she was still working out the details with World, and continued to represent to me the favorable loans terms of a one-year fixed loan at around 6% interest.

12. Many of the loan documents had to be notarized. I discovered later that they were notarized "after-the-fact" by a Yolando Apodaca, who must have been a relative of Juanita.

13. Misrepresenting the true terms of the loan, and concealing the truth from me by having me sign the documents in blank were not the only frauds that Diablo's agent, Ms. Apodaca, committed. After the closing I obtained a copy of the Final Settlement Statement which showed a $16,136.22 payment through escrow to a J Construction for apparent "home improvements." The invoice was a fraud, created by Ms. Apodaca to divert money to herself or a friend or relative, and there was never any such work done. I was not the only who was victimized by Ms. Apodaca, and on information and belief it is my understanding that Ms. Apodaca was later convicted of a crime for certain frauds related to her "loan dealings."

///

///

DECLARATION OF NADER SHATERIAN IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST THREATENED FORECLOSURE SALE

14. Diablo and Ms. Apodaca were in cahoots with World, who was busy selling negative amortization loans to naïve homeowners like myself. I wasn't familiar with these types of loans then, but have now come to learn a lot about them.

15. I learned after the fact that I had signed up for an 8% interest rate loan – but still thought that it was a one-year fixed. After the year was up, I contacted Wachovia (who then owned World), and asked about adjusting my interest rate downward – as it was considerably higher than the then current rates. I learned then that my loan was a three-year fixed, not a one-year. The nature of the loan had never been properly explained to me.

16. I also learned later that my loan was a negative amortization loan – and what is known as a "Pick-A-Payment" loan – and what that means: that the low loan payments I was offered for the first three years didn't even cover interest and that my principal amount was increasing every month.

17. I have tried many times to adjust my interest rate with Wachovia (now owned by Wells Fargo), but have never had any success because I could never qualify for the excessively higher payments - this was the fraud that was perpetrated on me. I was made a loan I could not qualify for, then when rates when down, denied modification because I could not qualify for the loan. Only with the fake gimmick of using the low teaser rate could I qualify.

18. In June of 2010 I contacted Wells Fargo directly, on my own, through a local bank agent – John Kearney, a Wells Fargo Bank "Loan Adjustment Specialist," seeking a loan modification. Mr. Kearney submitted a loan modification application to Wachovia, but I never heard back from Wells or Wachovia. Mr. Kearney later told me I had to contact Wachovia directly, on my own, and gave me an (800) number. It was the same number I had called previously seeking a rate adjustment and was denied.

///

19. I dealt directly with Wachovia then, meeting with a Wachovia agent in August/September of 2010. I faxed in an application, which was denied in October of 2010. I believe the denial was in bad faith, and that under the criteria represented to me I should have qualified for a modification of my loan.

20. I submitted a second application in November of 2010, and it was denied in December. Again, the denial was unwarranted.

21. Wells Fargo Bank states in a declaration they attached to the Notice of Default they recorded against my property, in March of 2010, that they "contacted the borrower" (me) as required by law to offer me alternatives to foreclosure. This is absolutely untrue. Like I said above, my first contact with Wells was in June, of 2010 when I contacted them. And that contact did not contain the statutory items they were obligated to disclose to me. The submittal of this false statement in support of their notice of default is sufficient in and of itself to invalidate the proceedings. Wells Fargo had not taken over the loan back when Wells claims to have notified me and spoken to me.

22. I sincerely think that Wells Fargo (and Wachovia) never had any intention of granting me a modification. I was denied an interest rate adjustment several times, and a loan modification twice, and both times for different reasons: I didn't make enough money, I had too much debt, etc. But neither of these modifications was processed in the special way (borrower finally recognizing the "Pick a Payment" wrongs) that will be available now under the Attorney General Settlement and the Class Action settlement, and should be easy for Wells to now apply to my situation. Additionally, my income has recently improved somewhat, so it is now possible I will qualify if Wells Fargo does not take my home from me before I have time to do so.

23. The California Attorney General and some class action attorneys have brought Wells Fargo partially to justice, but the justice has not yet trickled down to me. No one has evaluated me under the two settlements for a loan modification.

That process now needs to start, and it has not yet had a chance to start. The California Attorney General settlement only occurred in late December 2010. The press release indicates $2 billion dollars in new loans will be made to persons like me. I do not yet have a notification of it from the Attorney General, and thus have not yet had a loan modification process started with the special features under that settlement.

24. The class action case, M:09CV-2015 in the Northern District of California, is also relevant and I am asking the Court to take judicial notice of it. That settlement does not protect people like me who have a threatened sale, it only gives them possibly some minimal compensation after the fact. For that reason primarily, and for several other reasons, I have opted out of the settlement, although the administrator of the settlement may be contesting my opt out, so the status is not 100% clear. That settlement provides a good guideline for how Wells Fargo can, should, and hopefully will apply a loan modification for me, which could be a good basis with some additional provisions and injunctive relief until it is completed, for a settlement of my claim. The special set of "settlement" representatives to apply the special benefit standards of that settlement will already be in place and I believe they could be easily used to facilitate settlement of this case. However, if the sale is allowed to occur on May 20th when Wells has scheduled it and threatens to hold it, then I will not be eligible for the home saving features of loan modification plans which I believe I am eligible for under both settlements, or either, nor from the equivalent which I should be able to attain as equitable relief in this lawsuit, since my home will, but for injunctive relief, soon no longer belong to me. I love this home and it is of unique value to me.

25. One party has objected to the Class Action settlement and pointed out that although it is long and wordy, it is not easy to find where persons who are about to be foreclosed against get any help or assistance at all in not going over the cliff while the settlement is pending. Because of that objection, settlement approval

in the Class Action may be postponed, and it is likely there will be or may be a new opt in/opt out option emanating from how the settlement is revised to suit the objection. It is and remains my preference to resolve my differences directly with the defendants and to get my relief and my damages in State Court, but it is possible that developments in the Class Action could cause that choice to be re-determined at some later time.

26. The World loan was not only a financial hardship on me for years while I was paying it, but my dealings with Wells Fargo and Wachovia in the past couple of years have caused me great emotional distress. The damage has been significant to my credit, which is now ruined, and I now have no option of "other financing" to save my home.

27. It is my belief that the loan I was sold was designed to fail – and it did. Or at the least – it was designed to make money for the lender – which it did – without regard to the victim borrower.

28. It also seems evident to me that Wells Fargo is trying to conclude the foreclosure of my property prior to the finalization of either the class action settlement or the State Attorney General action of April 2011 that I may qualify for if I still own my home then. By allowing Wells Fargo to go forward with the sale, I would be effectively cut out of the potential to obtain relief for what seems to me, to the Class action Plaintiffs in the "Pick a Payment" case, and to the California State Attorney General to be a proper grievance in need to being redressed and addressed. I want the benefits of the California Attorney general Assurance, a copy of which is attached hereto, but they have never been offered to me. Wells has not to this date told me that they are willing to process an application for me under the new standards they have evolved, and I believe I may qualify under the new standards with principal reductions.

29. I understand that Wells Fargo is settling or has settled with homeowners like myself in class actions and Attorney General actions in at least

nine states, including California. A Copy of the California Settlement is attached to this declaration as **Exhibit E**. At paragraph II E, recognizing the depth of the wrong that has been done to California consumers by World and Wachovia, and Wells obligations on taking these items over, Wells signed with California's Attorney General an Assurance that I, and other victims like me, would be offered certain benefits. At page 2, paragraph II e of that Assurance, it says that Wells will offer to me an affordable loan modification that will include principal forgiveness. This has not yet occurred. It also says at page 13 paragraph VI that Wells will send to me two letters telling me how to proceed to get my loan modification. I have never received these letters. (In fact, my first communication with "Wells" was the June 2010 loan modification attempt in which I was referred to Wachovia – with Wells telling me there was nothing they could (or would) do for me.

30. I wish to have such a modification, but have not yet been able to start the process under these new and hopeful settlement guidelines. As I understand it, the California Attorney General settlement does not require me to participate in the Class Action settlement. There are significant problems with the Class Action settlement. The California Attorney general settlement does not require me to release any claims. I believe this framework is a good one to maximize the chance this matter can be settled on a basis that works for me and for Wells Fargo. However, if Wells Fargo is permitted to roll over me, a simple consumer, with their huge in-place machinery, and foreclose me out, I will have suffered irreparable harm and there will be no way to fix it.

31. As soon I receive the State Attorney General settlement letter, which I have not yet received (I had to research this web site myself) I will start the process of seeing if Wells Fargo will do for me what they promised the California attorney General that they would do in the Assurance document attached. I believe that if the sale is postponed while I'm pursuing my action against Wells Fargo, that I will prevail like other "Pick-A-Payment" loan plaintiffs and with the help of the

California Attorney General program, will get a principal reduction and a much fairer loan. If not, then I expect at trial I will be awarded sufficiently large damages that they will fund my claim for recession and/or lower the balance enough that I can obtain an affordable loan to repay the then reduced balance, and thus I will be able to keep my home. I am asking that this court allow me that opportunity. I am gainfully employed, have reasonable income, and but for the predatory practices complained of by the State Attorney General and which he concluded violated portions of California Business and Professions Code sections 17200 and 17500 (see paragraph B of the stipulation, Exhibit E) I would not need this Courts help with injunctive relief. But because of those violations and the others set forth in my complaint, I _do_ need the Courts help to avoid being crushed until I get time to get my loan modification and until I get time to prove my offsetting damages against the loan balance.

32. I make this declaration upon facts known personally to me and if called as a witness could and would testify competently to the same, except those on information and belief, and as to those I believe them to be true.

33. If the present foreclosure sale in this case allowed to go forward, there will be irreparable harm to me, and I will lose the opportunity to pursue my case in this action for equitable relief and to prevent the wrongful scheduled foreclosure, and also lose the benefits I might get as part of the settlement in the recent Attorney General settlement, and lose a path to benefits equivalent to those in the pending "Pick and Pay" Class action settlement.

34. If Wells and I do not agree to an enhanced modification after a streamlined modification review under the Attorney General program, which they have not yet offered to me, then I want to rescind the loan and get back all the interest they have wrongfully taken. I expect my rescission damages may equal the loan amount and I may be entitled to the house free and clear. I would rather

///

take the middle ground of a fair loan modification and principal reduction, as promised under the Attorney General program that does not require me to release Wells as a precondition of seeing if they will do the enhanced modification.

I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York this 8th day of April, 2011. If called as a witness, I could competently testify to the foregoing, except those matters on information and belief, and as to them, I believe them to be true.

*/s/ Nader Shaterian*

_____

Nader Shaterian

---

11

DECLARATION OF NADER SHATERIAN IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST THREATENED FORECLOSURE SALE

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of eighteen years and am not a party to the within-entitled action; my business address is 901 E Street, Suite 100, San Rafael, CA 94901

On the date below, the attached document(s) entitled:

**DECLARATION OF PLAINTIFF NADER SHATERIAN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RESTRAINING THREATENED AND SCHEDULED FORECLOSURE SALE**

was served on all interested parties in said matter addressed as follows:

| | |
|---|---|
| Robin Prema Wright, Esq. | Christopher A. Carr |
| Nicole K. Neff, Esq. | Viddell Lee Heard |
| WRIGHT, FINLAY & ZAK, LLP | ANGLIN, FLEWELLING, RASMUSSEN, |
| 4665 MacArthur Court, Suite 280 | CAMPBELL & TRYTTEN LLP |
| Newport Beach, CA 92660 | 199 S. Los Robles Ave., Suite 600 |
| | Pasadena, CA 91101-2459 |

☑ **(BY MAIL)** by placing a true copy thereof enclosed in a sealed envelope or package, addressed to the party(ies) as stated above or on the attached service list. I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the U.S. Postal Service. Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at San Rafael, California, that same day, with postage thereon fully prepaid. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☑ **(Federal)** I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 8, 2011

                               _/s/ Susan Cofano_ .
                               Susan Cofano
                               Legal Assistant

DECLARATION OF NADER SHATERIAN IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST THREATENED FORECLOSURE SALE