IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADER SHATERIAN,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION; CAL-WESTERN RECONVEYANCE CORPORATION; and DOES 1-50, inclusive,<br><br>    Defendants. | ) Case No. C-11-920 SC<br>)<br>) ORDER DENYING PLAINTIFF'S<br>) MOTION FOR PRELIMINARY<br>) INJUNCTION<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**I.**     **INTRODUCTION**

This lawsuit involves a mortgage loan Plaintiff Nader Shaterian ("Plaintiff") took out to refinance his Mill Valley, California home, and the subsequent attempts at foreclosure made by Defendants Wells Fargo Bank, National Association ("Wells Fargo") and Cal-Western Reconveyance Corporation ("Cal-Western") when Plaintiff stopped making mortgage payments. Before the Court is a fully briefed motion by Plaintiff for a preliminary injunction barring the June 17, 2011 scheduled foreclosure sale of his residence.[1] ECF No. 20 ("Mot"), 28 ("Opp'n"), 37 ("Reply"). For the following reasons, the Court DENIES Plaintiff's Motion.

---

[1] At the time Plaintiff filed his Motion, this sale was set for May 20, 2011. See Mot. The parties subsequently stipulated to continue the sale to June 17, 2011 so the Court could rule on Plaintiff's Motion. ECF No. 47.

## II. BACKGROUND

In 2003, Plaintiff purchased a home located at 511 Browning Court, Mill Valley, California 94941-3716. ECF No. 1 ("Notice of Removal") Ex. A ("Compl.") ¶¶ 1, 9. In August 2007, Plaintiff sought refinancing of his home "to take advantage of lowering interest rates and to be able to withdraw a portion of the equity in his home to be able to finish needed improvements to his home." Id. ¶ 10. Plaintiff alleges that he spent roughly $300,000 to build two retaining walls to prevent his home from sliding down the hill on which it was built. Id.

Plaintiff alleges that he contacted Diablo Funding Group, Inc. ("Diablo")[2] and Diablo qualified Plaintiff for a new mortgage loan for the property. Id. ¶¶ 4, 12. On August 27, 2007, Plaintiff signed the Deed of Trust, and it was recorded on September 13, 2007. ECF No. 11 ("Def.'s RJN") Ex. 6 ("Deed of Trust").[3]

---

[2] Diablo is not clearly identified in Plaintiff's Complaint or the papers filed before the Court. Plaintiff alleges that Diablo is a California corporation "acting as the agent of World [Savings Bank]," Compl. ¶ 5, but the facts pleaded suggest Diablo was a mortgage broker.

[3] Wells Fargo asks the Court to take judicial notice of a number of documents. ECF No. 11 ("Def.'s RJN"). Exhibits 1-5 are government documents Wells Fargo relies on to establish that Wells Fargo is the successor in interest to World Savings Bank. Exhibit 6 is the Deed of Trust. Exhibit 7 is the Adjustable Rate Mortgage Note ("ARM Note") dated August 27, 2007 and signed by Plaintiff. Exhibit 8 is the declaration of Plaintiff that was filed in state court before removal. Exhibit 9 is the Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") dated October 6, 2010 and recorded on October 7, 2010. Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. A court may also take judicial notice of a document if the plaintiff's claim depends on the contents of the document, and the parties do not dispute the authenticity of the document. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). However, the Court

2

1    Under the Deed of Trust, Plaintiff received a $985,000 loan
2 from World Savings Bank ("World") secured by his property. Id.
3 Plaintiff describes the loan as a "Pick-A-Payment" loan, and argues
4 that the loan was "intentionally designed to result in negative
5 amortization and obligations to pay compound interest." Id. ¶ 16.
6 Plaintiff claims he was unaware of the loan's terms at the time he
7 agreed to the loan due to "fraudulent non-disclosure" of their
8 terms. Id. ¶ 13. Specifically, Plaintiff alleges that he was
9 given blank loan documents and told that "the reason for this was
10 that negotiations were still underway with World" and that an
11 employee of Diablo would complete them. Id. ¶ 37. Plaintiff also
12 alleges that the disclosures he did receive were misleading. Id. ¶
13 15.

   Around October 2009, Plaintiff lost his job and stopped paying
15 his monthly mortgage payments. Reply at 1. Around this time,
16 Wells Fargo became World's successor in interest. Compl. ¶ 44; RJN
17 Exs. 1-6. Plaintiff sought modification of his loan, which Wells
18 Fargo ultimately denied. Compl. ¶ 16. On October 7, 2010, Cal-
19 Western recorded a Notice of Default. Compl. ¶ 48; see Notice of
20 Default. Cal-Western is identified in the Notice of Default as
21 "either the original trustee, the duly appointed substituted
22 trustee, or acting as agent for the trustee or beneficiary" under
23 the Deed of Trust. Id. at 2.[4] Filed with the Notice of Default is
24 a declaration of Sandra Garza ("Garza"), identified as a vice-

---

may not take judicial notice of the truth of the facts recited within a judicially noticed document. Lee v. City of Los Angeles, 250 F.3d 668, 688-90 (9th Cir. 2001). The Court GRANTS Wells Fargo's RJN, but limits its review of the exhibits accordingly.

[4] As the Court discusses infra, Plaintiff hotly disputes this identification of Cal-Western.

United States District Court
For the Northern District of California

3

president of Wells Fargo, in which she both authorizes "the trustee, foreclosure agent, and/or their authorized agent" to sign the Notice of Default on behalf of Wells Fargo and declares that Wells Fargo contacted Plaintiff as required by California Civil Code § 2923.5.  Id. at 3.

The Notice of Default stated that as of October 6, 2010, Plaintiff had accrued $60,175.64 in arrears.  It stated that Plaintiff had the legal right to stop the sale of the property by bringing his account in good standing prior to the sale, and noted that no sale date could be set until three months after the recording of the Notice of Default.  Id.  On January 12, 2011, more than three months later, Cal-Western recorded a Notice of Trustee's Sale, setting the sale date of the property for February 1, 2011. Mot. at 5.

On, January 31, 2011 -- the day before the scheduled sale -- Plaintiff commenced this action in the Superior Court of California, County of Marin.  See Compl.  Plaintiff brought eleven causes of action against Defendants Wells Fargo and Cal-Western: (1) fraud and deceit; (2) unconscionability; (3) breach of the covenant of good faith and fair dealing; (4) violation of Civil Code § 1916.7; (5) violation of Civil Code §§ 1920 and 1921; (6) violations of the Federal Truth-in-Lending Act ("TILA"); (7) breach of fiduciary duty; (8) unfair business practices; (9) rescission; (10) injunctive relief; and (11) declaratory relief.  See id. Some of these causes of action arise from the initial loan agreement; others involve the subsequent foreclosure process and Wells Fargo's refusal to offer Plaintiff a loan modification.

Plaintiff also filed an ex parte application for a temporary

4

1  restraining order barring the sale, which the state court granted,
2  continuing the foreclosure sale to April 11, 2011. Mot. at 5-6. A
3  preliminary injunction hearing was set for April 1, 2011 to
4  determine if the foreclosure sale should be continued until the end
5  of the proceedings. Id. at 6.

6  Defendants removed the case to federal court on February 28,
7  2011. See Notice of Removal. Defendants agreed to two additional
8  continuances of the foreclosure sale; it is currently scheduled for
9  June 17, 2011. ECF No. 47.

10  Now Plaintiff seeks a preliminary injunction enjoining the
11  trustee sale until the termination of this action. Plaintiff has
12  also filed a Motion to Remand, which is fully briefed. ECF Nos. 14
13  ("MTR"), 30 ("MTR Opp'n"), 35 ("MTR Reply").[5] Wells Fargo filed
14  separate motions to dismiss Plaintiff's Complaint and strike
15  portions of Plaintiff's Complaint; both motions are fully briefed.
16  ECF No. 9 ("MTD"), 33 ("MTD Opp'n"), 39 ("MTD Reply"); 10 ("MTS"),
17  32 ("MTS Opp'n"), 41 ("MTS Reply").[6]
18  ///
19  ///

---

[5] Plaintiff concedes in his MTR that this Court has federal question subject matter jurisdiction over this action due to his federal claims. MTR at 8. He argues that the parties are non-diverse, and thus the case should be remanded to state court for lack of subject matter jurisdiction if the federal causes of action are dismissed. Id. Accordingly, neither party challenges the Court's authority to rule on the instant Motion.

[6] In its Motion and supporting documents, Plaintiff makes numerous references to other pending litigation concerning Wells Fargo and "Pick-A-Payment" loans, and asks the Court to take judicial notice of numerous documents. ECF No. 19 ("Pl.'s RJN"). The Court GRANTS Plaintiff's unopposed RJN, but does not take judicial notice of the facts recited within the proffered documents. Specifically, it DENIES Plaintiff's request that the Court take judicial notice of the fact that "Pick-A-Payment" loans "caused harm to borrowers like Plaintiff."

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction to preserve the positions of the parties until a full trial can be conducted. LGS Architects, Inc. v. Concordia Homes, 434 F.3d 1150, 1158 (9th Cir. 2006). To warrant injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008). Within the Ninth Circuit, these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, where the Plaintiff's proof of likelihood of success is limited to raising "serious questions going to the merits," but the balance of hardships tips sharply in Plaintiff's favor, a preliminary injunction may be appropriate. Id.

## IV. DISCUSSION

### A. Preliminary Matters

Plaintiff cites to two concurrent actions in his Motion, and argues that both are relevant to his Motion.

First, Plaintiff devotes considerable space to the assurance between California's Office of Attorney General and Wells Fargo, which requires Wells Fargo to offer individuals who purchased "Pick-A-Payment" loans the opportunity to take part in a loan modification structure. See Mot. at 2; Pl.'s RJN Ex. 1 and 2.

6

Under the agreement, Wells Fargo is obligated to offer eligible borrowers loan modifications "presented in a 'waterfall' such that if a borrower is determined not to be eligible for a modification listed in the agreement, the borrower will then be considered for the next modification on the list of possible modifications." Mot. at 4. Borrowers who do not qualify for any of the steps of the waterfall and borrowers whose homes have already been sold at foreclosure sales may receive cash payments. Id. Plaintiff states that he "should qualify for a modification" under this assurance, and asks the Court to enjoin the foreclosure sale so he can proceed through this process. But Plaintiff provides no support for his bald assertion that he "should qualify" under this scheme. Furthermore, this argument in favor of preliminary injunction is completely untethered to the merits of his action. As such, the Court finds this assurance to be of little relevance to this action.

Second, Plaintiff refers to a related class action, In Re Wachovia Corp., No. 09-2105 (N.D. Cal.). Plaintiff states that he has opted out of the settlement "because it does not protect people like Plaintiff who have a threatened sale" and "it only gives them possibly some minimal compensation after the fact" and because of the requirement that he release all claims against Wells Fargo. Mot. at 3. But he qualifies this by stating that "the administrator of the settlement may be contesting his opt-out," without explaining this statement or providing a citation. Id. at 4. Plaintiff argues that the existence of this class action settlement supports his motion for injunctive relief. Id. Plaintiff could not be more wrong. If Plaintiff opted out of the

7

Settlement, then he has made the conscious decision to forego its benefits. If Plaintiff has not opted out, then he has released all claims and has no standing to bring this action. Plaintiff cannot have it both ways -- In Re Wachovia has no bearing on this case.

### B. Likelihood of Success on the Merits

Plaintiff has the burden of establishing that he is likely to succeed on the merits of his case. Winter, 129 S. Ct. at 374. Plaintiff makes two arguments relating to the merits in his Motion: he argues that Defendants failed to comply with California Civil Code § 2923.5 ("section 2923.5"), and contends that this renders the Notice of Default invalid. Mot. at 8. He also argues that Cal-Western lacked authority to issue the Notice of Default under California Civil Code § 2924(a)(1) ("section 2924(a)(1)"). Id. at 9.[7]

Plaintiff also briefly argues that his Complaint "contains numerous additional facts and causes of action that satisfy the requirement that he has raised serious questions going to the merits." Mot. at 10. Plaintiff offers no argument that these other causes of action satisfy the requirements for a preliminary injunction; rather, he asks the Court and Defendants to infer these arguments from his Complaint. This is improper: a plaintiff may not support a motion for a preliminary injunction by merely pointing to his complaint and the facts alleged therein. As such, the Court will not consider the other causes of action here.

///

---

[7] Plaintiff does not bring a cause of action for violation of §2923.5 in his Complaint, and it is unclear which causes of action are predicated on this alleged statutory violation. Section 2924 is only mentioned in Plaintiff's claim for fraud and intentional deceit. See Compl. ¶ 60.

8

1. Section 2923.5

California's Civil Code provides a framework for non-judicial foreclosure: the lender must first record a notice of default; once three months have elapsed, the lender must give notice of the planned foreclosure sale. Cal. Civ. Code § 2924.

Section 2923.5 concerns the notice of default. It requires the "mortgagee, trustee, beneficiary, or authorized agent" seeking to file a notice of default to first contact the borrower in person or by telephone "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). The notice of default may not be filed until thirty days after this initial contact or the statute's due diligence requirements are satisfied. Id. § 2923.5(a)(1). During this initial contact, the party seeking to file a notice of default must advise the borrower that he or she has the right to request a subsequent meeting and, if requested, schedule the meeting within fourteen days. Id. § 2923.5(a)(2).

The California Court of Appeal has narrowly interpreted section 2923.5 "as to avoid having the state law invalidated by federal preemption." Mabry v. Super. Ct., 185 Cal. App. 4th 208, 231 (Ct. App. 2010).[8] The rights provided to borrowers under § 2923.5 are purely procedural -- there is no "right" to a loan

---

[8] Wells Fargo argues that § 2923.5 is preempted by the Federal Home Owners Loan Act ("HOLA"). Opp'n at 5. The Ninth Circuit has not ruled on this issue, and district courts within the Ninth Circuit are split on the issue. See Loder v. World Savings Bank, No. 11-0053, 2011 WL 1884733, at *3 (discussing preemption and collecting cases). While preemption is a question of federal law, the interpretation of a state statute is within the purview of the court of that state. Accordingly, this Court applies Mabry's narrow application of § 2923.5 and finds this application not preempted by federal law.

modification. Id. The lender's obligations under § 2923.5 to "assess" the borrower's financial situation and "explore" options to avoid foreclosure can be satisfied by simply asking the borrower "why can't you make your payments?" and "telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or short sales)." Id. at 232. The statute does not place a duty on the lender "to become a loan counselor itself." Id. at 219.

In the declaration filed with the Notice of Default, Wells Fargo vice president Garza declares that Wells Fargo contacted Plaintiff as required by § 2923.5. Notice of Default at 3. Wells Fargo submits as evidence of this the "Consolidated Notes Log" for the loan, which it claims shows a Wells Fargo representative called Plaintiff to discuss loan modification on December 14, 2009, and on March 3, 2010, Plaintiff's authorized loan modification agent contacted Wells Fargo to discuss loan modification. Dolan Decl. Ex. D ("Consol. Notes Log").[9]

Plaintiff declares that this is "absolutely untrue," and states that his first contact with Wells Fargo was in June 2010, when he contacted them to inquire into loan modification. Shaterian Decl. ¶ 21. The Court finds that while there may be a dispute as to whether these disclosures took place, Plaintiff is unlikely to succeed on the merits given the evidence produced by Wells Fargo.

The remedy available under § 2923.5 is the postponement of a foreclosure sale. Mabry, 185 Cal. App. 4th at 213. Wells Fargo

---

[9] Michael Dolan ("Dolan"), employee of Wells Fargo and former employee of World, filed a declaration in opposition to Plaintiff's Motion. ECF No. 29.

10

1  additionally argues that even if it had failed to comply with §
2  2923.5, it would not justify enjoining the sale, because the
3  statutory violation itself, not the pending foreclosure, must be
4  the cause of the injury.  Opp'n at 8.  Essentially, Wells Fargo
5  argues that Plaintiff was aware of the alternatives to foreclosure
6  given that he made multiple attempts to modify his loan, and hence
7  the Plaintiff's lack of money, not his lack of knowledge, led to
8  the foreclosure.
9       Because it is unclear which causes of action are predicated on
10 Wells Fargo's alleged statutory violation, it is unclear whether
11 Plaintiff must prove an injury.  Nevertheless, the Court finds
12 merit in Wells Fargo's argument.  If Plaintiff had alleged that he
13 was unaware of the alternatives to foreclosure or he had disputed
14 the fact that he was in default on his mortgage, then a claim for
15 relief under § 2923.5 would be stronger.  But Plaintiff knew he had
16 not paid his mortgage payments since October 2009, and he had made
17 multiple attempts to modify his loan.  California law ensures that
18 borrowers have at least three months between filing of the notice
19 of default and the foreclosure sale so they can attempt to avoid
20 foreclosure.  Cal. Civ. Code. § 2924(a)(2).  More than seven months
21 have passed since the filing of the Notice of Default. As such,
22 Plaintiff has arguably already received the benefits of § 2923.5.
23      For these reasons, the Court finds that Plaintiff is unlikely
24 to succeed on the merits of a cause of action premised on a
25 violation of § 2923.5.
26 ///
27 ///
28 ///

11

## 2. Section 2924(a)(1)

Section 2923(a)(1) also concerns the notice of default. It requires "the trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for or record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default." Cal. Civ. Code § 2924(a)(1).

The Notice of Default was recorded by Cal-Western. Plaintiff argues that this Notice of Default is void because Cal-Western was not substituted as trustee until December 7, 2010. Mot. at 9. Plaintiff also argues that Cal-Western has not established that it was acting as the agent for the trustee or the beneficiary. Id.

In response, Wells Fargo argues that Cal-Western served as Wells Fargo's authorized agent in recording the Notice of Default. Opp'n at 9. Wells Fargo points to the Garza Declaration, filed with the Notice of Default, in which the Wells Fargo vice president "authorizes the trustee, foreclosure agent and/or their authorized agent to sign, on behalf of the beneficiary/authorized agent, the Notice of Default." See Garza Decl. Wells Fargo also argues that Plaintiff misconstrues the burden of proof, asserting that on a motion for preliminary injunction, Plaintiff has the burden of establishing no agency relationship exists. Opp'n at 9-10.

The Court agrees with Wells Fargo: Plaintiff, not Wells Fargo, has the burden. To establish a § 2924(a)(1) violation at trial, Plaintiff would have to prove by a preponderance of the evidence that Cal-Western was not Wells Fargo's authorized agent at the time it filed the Notice of Default. Plaintiff's sole evidence in support of this argument is the fact that Cal-Western was later

12

substituted as trustee.  This evidence does not tend to prove Cal-Western was not Wells Fargo's agent at the time the Notice of Default was filed.  Furthermore, to the extent that Plaintiff claims that the alleged statutory violation provides the basis for his fraud cause of action, Plaintiff has failed to allege a related injury caused by this violation.

The Court finds Plaintiff is unlikely to succeed on the merits of an action premised on a violation of § 2924(a)(1).

### C. Irreparable Harm

Because a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Plaintiff must show that he is likely to suffer irreparable injury in the absence of an injunction.  Winter, 129 S. Ct. at 375-76.  Winter overruled the previous test used by the Ninth Circuit and other circuits which required a showing irreparable injury was possible, rather than likely.  See Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009).

Plaintiff argues that if the sale is not enjoined, his house will be sold, and cites Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661-62 (9th Cir. 1988), for the legal proposition that "foreclosure on real property constitutes irreparable harm."  Mot. at 7.  Wells Fargo disagrees, citing Alcaraz v. Wachovia Mortgage FSB, 592 F. Supp. 2d 1296, 1304, 1306 (E.D. Cal. 2009), another foreclosure case in which the court found that because the plaintiff could not afford the house, the threatened sale did not constitute irreparable harm.

The Court agrees with Wells Fargo.  While the loss of a home is a serious injury, Plaintiff's injury is undercut by the fact

13

1  that he has not paid a mortgage payment in eighteen months, is more
2  than $60,000 in arrears, and does not allege a loss of equity in
3  the property.  As such, the Court finds that Plaintiff has failed
4  to establish irreparable harm is likely.

### D. Balance of Equities

Plaintiff argues that the balance of equities favors Plaintiff, stating: "If the preliminary injunction is denied, Plaintiff will lose his home to foreclosure. If the preliminary injunction is granted, Defendant will have to delay the foreclosure until the conclusion of this case." Mot. at 12.  Wells Fargo counters that Plaintiff has always known the consequences of default, and argues that by postponing the sale, "Wells Fargo would be forced to continue to hold a depreciating security interest, without any ability to stop or slow its ongoing losses." Opp'n at 12.  Wells Fargo also argues that Plaintiff delayed in seeking injunctive relief, having filed his Complaint the day before the foreclosure sale was initially scheduled. Id. at 12-13.  Wells Fargo argues that foreclosure is "inevitable and just" given the fact that Plaintiff "has now been in default for approximately 18 months." Id. at 12.

The Court agrees with Wells Fargo.  Plaintiff claims that he stopped paying mortgage payments when he lost his job. Reply at 1. He claims that he rebuilt his income "to a point where he was able to report to the lender that he made significant income each month." Id. at 3.  Yet despite this reversal of fortune, he has made no good faith attempt to bring his account into good standing. He commenced this action at the eleventh hour.  These facts do not tip the equities in his favor.

14

1  **E.  Public Interest**

2  Neither party makes a compelling argument that the Court's
3  ruling on Plaintiff's Motion will affect the public interest.

5  **V.  CONCLUSION**

6  For the foregoing reasons, the Court DENIES Plaintiff Nader
7  Shaterian's motion for a preliminary injunction restraining the
8  trustee's sale of the property.  The June 17, 2011 foreclosure sale
9  of the house located at 511 Browning Court, Mill Valley, California
10 shall proceed as scheduled.

11 Wells Fargo's Motion to Dismiss and Motion to Strike and
12 Plaintiff's Motion to Remand are still before the Court.  Because
13 this Order and the foreclosure sale may moot portions of these
14 motions, the parties are ordered to meet and confer to discuss how
15 the sale, this Order, and other developments in the case affect the
16 pending motions.  The parties shall file a joint statement with the
17 Court clearly identifying: which causes of action Plaintiff still
18 intends to assert against Defendants; which causes of action, if
19 any, that Plaintiff agrees to strike from his Complaint; and which
20 arguments in the pending motions are now moot.  This statement
21 shall be filed no later than fourteen (14) days from the date of
22 this Order.  Failure to comply with this Order shall be deemed
23 sufficient grounds for sanctions.

25 IT IS SO ORDERED.

27 Dated: June 10, 2011              
28                                   UNITED STATES DISTRICT JUDGE

15