United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADER SHATERIAN, | ) Case No. 11-00920 SC |
| Plaintiff, | ) ORDER GRANTING IN PART AND<br>) DENYING IN PART WELLS |
| v. | ) FARGO'S MOTION TO DISMISS<br>) AND DENYING WELLS FARGO'S |
| WELLS FARGO BANK, N.A., et al., | ) MOTION TO STRIKE |
| Defendants. | ) |

## I.  **INTRODUCTION**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves to dismiss and strike Plaintiff Nader Shaterian's ("Shaterian") Second Amended Complaint ("SAC").  ECF Nos. 60 ("MTD"); 61 ("MTS").  Wells Fargo's motions are fully briefed, though Wells Fargo has not filed a reply brief in support of its Motion to Strike.  ECF Nos. 72 ("MTS Opp'n"), 73 ("MTD Opp'n"), 74 ("MTD Reply").  For the reasons set forth below, the Court GRANTS in part and DENIES in part Wells Fargo's Motion to Dismiss and DENIES Wells Fargo's Motion to Strike.

## II.  **BACKGROUND**

As it must on a Rule 12(b)(6) motion to dismiss, the Court

United States District Court
For the Northern District of California

1   takes all well-pleaded facts in the SAC as true.  In 2003,

2   Shaterian purchased a home located at 511 Browning Court, Mill

3   Valley, California.  ECF No. 56 ("SAC") ¶ 9.  In August 2007,

4   Shaterian sought refinancing of his home "to take advantage of

5   lowering interest rates and to be able to withdraw a portion of the

6   equity in his home to be able to finish needed improvements to his

7   home."  Id. ¶ 10.  Shaterian alleges that he spent roughly $300,000

8   to build two retaining walls to prevent his home from sliding down

9   the hill on which it was built.  Id.

10      Shaterian alleges that, in August 2007, Diablo Funding Group,

11  Inc. ("Diablo")[1] and World Savings Bank ("WSB") qualified him for a

12  new mortgage loan for the property.  Id. ¶ 12.  WSB was a federal

13  savings bank regulated by the Office of Thrift Supervision ("OTS").

14  RJN[2] Exs. A ("WSB Certificate of Corp. Existence"), C ("Wachovia

---

[1] Diablo is not clearly identified in Shaterian's Complaint or the
papers filed before the Court.  Shaterian alleges that Diablo is a
California corporation, SAC ¶ 7, and the facts pled suggest Diablo
was a mortgage broker.

[2] Wells Fargo asks the Court to take judicial notice of a number of
documents.  ECF No. 62 ("RJN").  Exhibits A-E are government
documents Wells Fargo relies on to establish that Wells Fargo is
the successor in interest to WSB.  Exhibit F is the Deed of Trust.
Exhibit G is the Adjustable Rate Mortgage Note dated August 27,
2007 and signed by Plaintiff.  Exhibit H is the Notice of Default
and Election to Sell Under Deed of Trust ("Notice of Default")
dated October 6, 2010 and recorded on October 7, 2010.  Exhibit I
is the declaration of Shaterian in support of an application for
temporary restraining order filed in state court.  Under Rule 201
of the Federal Rules of Evidence, a court may take judicial notice
of facts generally known within the territorial jurisdiction of the
trial court or capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned.
A court may also take judicial notice of a document if the
plaintiff's claim depends on the contents of the document, and the
parties do not dispute the authenticity of the document.  Knievel
v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  However, the Court
may not take judicial notice of the truth of the facts recited
within a judicially noticed document.  Lee v. City of Los Angeles,

United States District Court
For the Northern District of California

1    Mortgage FSB Charter").  WSB changed its name to Wachovia Mortgage

2    ("Wachovia"), but remained chartered under the Home Owner's Loan

3    Act ("HOLA") and overseen by OTS.  RJN Ex. B ("Nov. 19, 2007 OTS

4    Ltr."); Wachovia Mortgage FSB Charter.  Around November 2009,

5    Wachovia became a division of Wells Fargo, and consequently, Wells

6    Fargo became WSB's successor in interest.  RJN Ex. D ("Off. Cert.

7    of the Comptroller of the Currency").

8       The type of loan provided to Shaterian was an Option

9    Adjustable Rate Mortgage ("Option ARM").  SAC ¶ 14.  Shaterian also

10   describes his loan as a "pick-a-payment" loan.  Id. ¶ 15.  Pick-a-

11   payment loans "allow the borrower to select and make a minimum

12   payment amount for a limited time and subject to certain

13   conditions."  Id. ¶ 16.  Loan documents provided to Shaterian

14   included an Adjustable Rate Mortgage Note ("the Note") and a Truth-

15   in-Lending Disclosure Statement ("TILDS").  Id.  On August 27,

16   2007, Shaterian signed a Deed of Trust, and it was recorded on

17   September 13, 2007.  RJN Ex. F. ("Deed of Trust").  According to

18   the Deed of Trust, Shaterian received a $985,000 loan from WSB

19   secured by his property.  Id.

20       Shaterian alleges his loan was "intentionally designed to

21   result in negative amortization and obligations to pay compound

22   interest."  Id. ¶¶ 15, 19.  He claims he was unaware of the loan's

23   terms at the time he agreed to the loan due to "fraudulent non-

24   disclosure" of its terms and because the closing documents were

25   "executed in blank."  Id. ¶ 15.  He also claims that the

26

27   250 F.3d 668, 688-90 (9th Cir. 2001).  The Court GRANTS Wells
     Fargo's RJN, but limits its review of the exhibits accordingly.

28

1  disclosures he did receive were misleading.  Id. ¶ 17.

2       In April 2010, Shaterian contacted Wachovia (WSB's successor

3  in interest) about obtaining a loan modification, but received no

4  response.  Id. ¶ 143.  In June 2010 John H. Kearny ("Kearny"), a

5  Wells Fargo loan adjustment specialist, contacted Shaterian to

6  assist him with obtaining a loan modification and Shaterian

7  submitted a completed application later that month.  Id. ¶¶ 144,

8  147.  In August 2010, Kearny informed Shaterian that his

9  application had been rejected but that he could qualify for the

10 loan modification by showing an income of $9,500 per month.  Id. ¶¶

11 144, 148-49.  Shaterian eventually increased his income to $15,000

12 per month by expanding his business and reapplied for the loan

13 modification in both October and November 2010, but he was rejected

14 for a second and third time.  Id. ¶¶ 150, 152.

15      On October 7, 2010, Cal-Western Reconveyance Corporation

16 ("Cal-Western"), the substituted trustee on Shaterian's Deed of

17 Trust, recorded a Notice of Default.  SAC Ex. 4 ("Not. of

18 Default").  The Notice of Default stated that, as of October 6,

19 2010, Shaterian had accrued $60,175.64 in arrears.  Id. at 1.  On

20 January 12, 2011, a Notice of Trustee's sale was recorded, setting

21 a sale date of February 1, 2011.  ECF No. 1 ("Not. of Removal") Ex.

22 B.  Shaterian later filed a Chapter 13 petition in bankruptcy

23 court, staying the scheduled foreclosure sale until July 18, 2011.

24 ECF No. 55 ("July 7, 2011 Order") at 1.  It is unclear whether the

25 foreclosure sale has yet taken place.

26      On January 28, 2011 Shaterian commenced this action in the

27 Superior Court of California, County of Marin.  Not. of Removal.

28

4

**United States District Court**
For the Northern District of California

Three days later, Shaterian filed a First Amended Complaint ("FAC") in state court.  Id.  Defendants removed the case to federal court on February 28, 2011, id., and moved to dismiss and strike the FAC on March 13, 2011, ECF No. 10.  Shaterian later moved for a preliminary injunction to restrain the trustee's sale of his property which the Court ultimately denied.  ECF Nos. 16, 20, 52. After denying the motion for a preliminary injunction and learning of Shaterian's bankruptcy petition, the Court granted Shaterian thirty days leave to amend his complaint and denied Wells Fargo's pending motions to dismiss and strike as moot.  July 7, 2011 Order at 2.  As Shaterian was allowed to file a third complaint, the Court stated that "any claims dismissed on a subsequent motion to dismiss will be dismissed without leave to amend," and that the Court would only grant additional leave to amend if Shaterian filed a motion under Federal Rule of Civil Procedure 15(a)(2) establishing that justice so required.  Id. at 2-3.

Shaterian filed his SAC on August 5, 2011.  The SAC alleges ten claims:  (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; (2) fraudulent omissions; (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) aiding and abetting fraud; (7) violation of California Civil Code Section 2923.5; (8) breach of oral contract; (9) fraud through misrepresentation in oral contract; and (10) declaratory relief.  Some of these claims arise from the initial loan agreement; others involve the subsequent foreclosure process and Wells Fargo's refusal to offer

Shaterian a loan modification.

On September 2, 2011, Wells Fargo moved to dismiss each of Shaterian's claims.  Also on September 2, 2011, Wells Fargo moved to strike Shaterian's punitive damages allegations on the grounds that Shaterian does not allege a proper basis for recovering such damages.

**III.  LEGAL STANDARD**

**A.   Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." <u>Starr v. Baca</u>, 633 F.3d 1191, 1204 (9th Cir. 2011).

### B. **Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." <u>Rosales v. Citibank</u>, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." <u>Platte Anchor Bolt, Inc. v. IHI, Inc.</u>, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

## IV. **DISCUSSION**

### A. **Wells Fargo's Motion to Dismiss**

#### 1. **Claim for Violation of TILA (Claim 1)**

In his first claim for relief, Shaterian alleges that the Note and TILDS violated TILA because they failed to "clearly and conspicuously disclose": (1) "that payment schedules are not based on the actual interest rate," (2) "negative amortization," (3) "the legal obligations between the parties," and (4) "the effect of rate and payment caps." SAC ¶ 36. Based on Wells Fargo's alleged TILA violations, Shaterian seeks rescission, damages, attorney's fees,

1   and costs.   Id. ¶ 50.   With respect to his rescission remedy,

2   Shaterian alleges that he "has the ability to tender the loan

3   amount with the help of business associates," but requests this

4   amount be offset by any TILA damages the Court awards him.   Id. ¶

5   49.

6       TILA imposes several disclosure requirements on lenders of

7   consumer loans and their assignees.   Generally, the law requires a

8   lender to disclose, among other things, the amount financed, the

9   total finance charge, the finance charge expressed as an annual

10  percentage rate, the sum of the amount financed and the finance

11  charge ("total of payments"), and the number, amount, and due dates

12  of payments scheduled to repay the total of payments.   See 15

13  U.S.C. § 1638.

14      Wells Fargo first argues that Shaterian's TILA claim should be

15  dismissed because negative amortization need only be disclosed in

16  the Loan Program Disclosure and need not be repeated in the TILDS.

17  MTD at 6-7.   Wells Fargo argues that the adjustable loan program

18  disclosure statement, which is not attached to the SAC or

19  Defendants' RJN, provided Shaterian with adequate disclosures under

20  TILA.   Id.

21      Shaterian responds that Wells Fargo's argument misreads the

22  SAC because the alleged TILA violation is broader than just the

23  failure to disclose negative amortization.   MTD Opp'n at 10-11.

24  Shaterian also argues that he did not allege Wells Fargo violated

25  TILA by failing to disclose the possibility of negative

26  amortization, but by failing to "clearly and conspicuously"

27  disclose that negative amortization was guaranteed to occur if

28

United States District Court
For the Northern District of California

1    Shaterian followed the payment schedule provided.  Id. at 11-12.

2        Neither party is particularly clear about exactly what TILA

3    requires with respect to the form and content of disclosures.

4    Nevertheless, based on the SAC and the available judicially

5    noticeable facts, the Court cannot conclude that all required TILA

6    disclosures were made.  Wells Fargo's Motion to Dismiss does not

7    address all of the TILA violations alleged by Shaterian.  Further,

8    the Loan Program Disclosure form, which Wells Fargo contends

9    disclosed that negative amortization would occur, is not before the

10   Court.

11       Wells Fargo next argues that Shaterian's TILA claim for

12   rescission fails because Shaterian cannot tender the money he

13   received through the loan.  MTD at 7.  Wells Fargo urges the Court

14   not to accept Shaterian's allegation that his business associates

15   will donate the tender amount, pointing to the fact that Shaterian

16   has filed for bankruptcy.  Id. at 7.

17       TILA requires that a borrower return all money or property

18   received from the lender to complete a rescission.  See 15 U.S.C.

19   1635(b).  The Court finds that Shaterian has alleged sufficient

20   facts to show that he could tender the money he received through

21   the loan, and the Court must assume the veracity of all well-

22   pleaded factual allegations on a motion to dismiss.  Shaterian need

23   not provide evidence of his ability to tender at this stage.

24   Viewing the SAC in the light most favorable to the pleader,

25   Shaterian's allegation that business associates will help him fund

26   the tender is not implausible.

27       Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss

28

9

with respect to Shaterian's first claim for violation of TILA.

### 2.    HOLA Preemption (Claims 2 through 10)

Wells Fargo contends that Shaterian's remaining claims, all of which are brought under state law, are preempted by HOLA.  MTD at 1-6.  Under HOLA, Congress gave OTS authority to issue regulations concerning thrifts such as WSB, Wells Fargo's predecessor in interest.  See 12 U.S.C. 1464; Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).  Pursuant to HOLA, OTS promulgated a regulation stating that OTS "occupies the entire field of lending regulation for federal savings associations."  12 C.F.R. § 560.2(a).  The regulation further provides that "federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities."  Id.  Preempted state laws include those relating to "[t]he terms of credit, including amortization of loans and the deferral and capitalization of interest," "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms," and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  Id. § 560.2(b).  However, state "contract and commercial law," "real property law," and "tort law," among other things, "are not preempted to the extent that they only incidentally affect lending operations . . . or are otherwise consistent with the purpose [of the regulation]."  Id. § 560.2(c).

OTS has outlined a framework for evaluating whether or not a state law is preempted under 12 C.F.R. § 560.2:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996).

In Silvas, the Ninth Circuit employed this framework to determine whether a plaintiff's UCL claims, "as applied," were preempted under OTS regulations.  514 F.3d at 1004-07.  In doing so, "the Ninth Circuit focused not on the nature of the cause of action allegedly preempted, but rather on the 'functional effect upon lending operations of maintaining the cause of action.'" Rumbaua v. Wells Fargo Bank, N.A., No. 11-1998 SC, 2011 U.S. Dist. LEXIS 95533, at *19 (N.D. Cal. Aug. 25, 2011) (citation omitted). The pertinent question was whether applying a state law to a federal savings association would "impose requirements" concerning activities regulated by OTS.  Id.  This Court has previously held that claims "premised on fraud or promises made by Wells Fargo . . . are not necessarily preempted, because the only 'requirement' they impose on federal savings banks is that they be held responsible for the statements they make to their borrowers."[3]  Id.

---

[3] Other district courts in this Circuit have reached a similar conclusion.  See Johannson v. Wachovia Mortg. FSB, No. C 11-02822 WHA, 2011 U.S. Dist. LEXIS 86692, at *21-23 (N.D. Cal. Aug. 5, 2011); DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390-LHK, 2011 U.S. Dist. LEXIS 8296, at *17-19 (N.D. Cal. Jan. 28, 2011); Ibarra

United States District Court
For the Northern District of California

1   at 20.

2        In light of this framework, the Court finds that Shaterian's

3   third, fourth, fifth, sixth, seventh, eighth, and ninth claims are

4   not preempted by HOLA.  Wells Fargo argues that these claims are

5   preempted by 12 C.F.R. § 560.2(b) because they pertain to terms of

6   credit, disclosure, and the process, origination, or sale of

7   mortgages.  MTD at 3.  The Court disagrees.  These claims relate to

8   general legal duties with which every business must comply and only

9   incidentally affect Wells Fargo's lending practices.  Shaterian's

10  fraud claims, i.e., claims three, six, and nine, do not impose

11  additional requirements concerning lending operations regulated by

12  OTS other than the general requirement that Wells Fargo is

13  prohibited from misrepresenting material facts and defrauding its

14  borrowers.  Shaterian's contract claims, i.e., claims four, five,

15  and eight, merely seek to force Wells Fargo to adhere to the terms

16  of its agreements with Shaterian.  The Court has already held

17  Shaterian's claim for violation of California Civil Code Section

18  2923.5 is not preempted by HOLA.  See ECF No. 52 at 8 n.7.

19  Additionally, these claims clearly fit within the categories of

20  laws which are exempted from preemption under 12 C.F.R. § 560.2(c)

21  as they sound in tort, contract, commercial, and real property law.

22       In contrast, Shaterian's second claim for fraudulent omissions

23  relates to substantive lending requirements.  Other district courts

24  in this circuit have found that even claims for fraud or

25  misrepresentation may be preempted where they relate to inadequate

26  disclosures of fees, interest rates, or other loan terms.  See

27  ─────────────────────────────────────────────────────────────

28  v. Loan City, No. 09-CV-02228-IEG (POR), 2010 U.S. Dist. LEXIS
    6583, at *14-16 (S.D. Cal. Jan. 27, 2010).

**United States District Court**
For the Northern District of California

1   DeLeon, 2011 U.S. Dist. LEXIS 8296, at *16-17.  Such claims impose

2   additional substantive requirements relating to lending activities

3   regulated by OTS.  See id.  Shaterian's second claim for fraudulent

4   omissions relates to WSB's duty to make various disclosures in loan

5   documents, including the Note and the TILDS.  See SAC ¶ 52.

6   Accordingly, this claim is preempted by HOLA.

7       Shaterian's tenth claim asks the court for a declaration

8   concerning the legal and factual issues set forth in the first nine

9   claims.  The Court finds that this claim is preempted to the extent

10  it seeks a declaration concerning Shaterian's claim for fraudulent

11  omissions.

12      Accordingly, the Court DISMISSES Shaterian's second claim for

13  fraudulent omissions as it is preempted by HOLA.

14          **3.   Claim for Violation of the California UCL (Claim 3)**

15      Shaterian alleges that Wells Fargo violated the California UCL

16  by luring him and other borrowers into Option ARM loans with

17  promises of low payments while withholding the fact that these

18  loans were designed to cause negative amortization.  SAC ¶¶ 70-71.

19      Wells Fargo argues that Shaterian's UCL claim is preempted by

20  TILA because it asserts a failure to disclose information in the

21  TILDS or other required TILA disclosure.  MTD at 19.  The Court

22  disagrees.  TILA does not preempt state laws, "except to the extent

23  that those laws are inconsistent" with TILA.  15 U.S.C. § 1610;

24  Silvas, 514 F.3d at 1007.  For example, district courts in this

25  circuit have held that UCL claims based on false or misleading oral

26  representations are not preempted by TILA because TILA regulates

27  only written disclosures.  See Yang v. Home Loan Funding, Inc., No.

28

United States District Court
For the Northern District of California

1  CV F 07-1454 AWI GSA, 2010 U.S. Dist. LEXIS 21837, at *28-29 (E.D.

2  Cal. Feb. 18, 2010); <u>Kajitani v. Downey Sav. & Loan Ass'n</u>, 647 F.

3  Supp. 2d 1208, 1220 (D. Haw. 2008).  When the SAC is liberally

4  construed, Shaterian's UCL claim does not solely rest on allegedly

5  false statements in the TILDS or other written disclosures required

6  by TILA.  The UCL claim is also predicated on allegations

7  concerning "promises of low payments" and other means by which

8  Wells Fargo "trumpeted their low payment loans to the public."

9  <u>See</u>, <u>e.g.</u>, SAC ¶¶ 71, 73.  The Court finds that Shaterian's UCL

10 claims are not preempted to the extent they are based on

11 allegations of misconduct outside of written deficiencies in the

12 TILDS or other required TILA disclosures.

13     Wells Fargo also argues that the UCL claim fails

14 "substantively" because the Note disclosed the possibility that the

15 principal amount due on the loan would increase if payments were

16 insufficient to cover interest.  MTD at 20.  Wells Fargo claims

17 that, with an ordinary calculator, Shaterian should have been able

18 to figure out that his principal amount would increase.  <u>Id.</u>  The

19 Court finds this argument unpersuasive, as it ignores Shaterian's

20 allegations concerning false promises of a "low, fixed payment" and

21 "only a small annual increase in the payment amount."  <u>See</u> SAC ¶

22 70.  As the terms of the Note were allegedly contradicted by these

23 false promises, it is plausible that Shaterian was misled.

24 Further, Wells Fargo offers no authority suggesting that a UCL

25 claim fails where a borrower should be able to see through alleged

26 lies and omissions by performing potentially complicated interest

27 and principal calculations.  Nor does Wells Fargo point to any

28

1   particular language in the Note which indicated, in a

2   straightforward way, that the loan would result in negative

3   amortization.

4        Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss

5   with respect to the third claim for violation of the California

6   UCL.

7              **4.    Claim for Breach of Written Contract (Claim 4)**

8        As to the fourth claim for breach of contract, Shaterian

9   alleges that WSB "expressly and/or through its conduct and actions

10  agreed that Plaintiff's monthly payment obligation would be

11  sufficient to pay both the principal and interest owed on the

12  loan." SAC ¶ 94.  Shaterian alleges that WSB and Wells Fargo

13  breached this agreement when they failed to apply any portion of

14  Shaterian's monthly payments towards the principal balance on the

15  loan.  Id. ¶ 96.

16       Wells Fargo argues that Shaterian fails to allege a breach of

17  contract because the Note does not contain a promise that

18  Shaterian's payments would be sufficient to pay off both the

19  interest and principal on the loan.  MTD at 7-8.  Wells Fargo

20  points out that Shaterian has acknowledged that a pick-a-payment

21  loan allows a borrower to select an interest-only, or even smaller,

22  minimum payment.  Id. at 8 (citing SAC ¶ 16).  Thus, Wells Fargo

23  argues, it was Shaterian who determined whether his payments would

24  cover both principal and interest.  Id.  Shaterian responds by

25  quoting much of the language from his fourth claim without further

26  analysis, and by pointing to a provision in the Note that states:

27  "I [Shaterian] will pay Principal and interest by making payments

28

every month."  Id.

The Court finds that this language does not constitute a promise by WSB or Wells Fargo that Shaterian's monthly payments would cover principal and interest.  Shaterian's conclusory allegation that WSB "expressly and/or through its conduct" made such a promise is insufficient to state a claim for breach of contract.  Accordingly, the Court DISMISSES Shaterian's fourth claim.

### 5.   Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 5)

Shaterian's fifth claim for breach of the implied covenant of good faith and fair dealing mirrors his claim for breach of contract.  Shaterian alleges that the Note and TILDS "expressly and impliedly" provided that negative amortization would not occur if Shaterian made his monthly payments.  SAC ¶ 104.  Shaterian further alleges that, contrary to these provisions, WSB did not apply any part of Shaterian's payments to the principal on the loan.  Id. ¶ 106.

Wells Fargo argues that the claim is time barred since the statute of limitations for a breach of implied covenant of good faith and fair dealing is two years, the breach allegedly occurred in 2007, and Shaterian did not bring this action until 2011.  MTD at 10.  Shaterian responds that the statute of limitations was tolled by a 2007 class action in which he is a plaintiff.  MTD Opp'n at 16.  Wells Fargo does not offer a response to this argument.  Accordingly, the Court finds the implied covenant claim is not time-barred.

**United States District Court**
For the Northern District of California

1    Wells Fargo also argues that the implied covenant claim is

2  superfluous because it is duplicative of Shaterian's contract

3  claim.  MTD at 10.  Where allegations for breach of the implied

4  covenant "do not go beyond the statement of a mere contract breach

5  and, relying on the same alleged acts, simply seek the same damages

6  or other relief already claimed in a companion contract cause of

7  action, they may be disregarded as superfluous as no additional

8  claim is actually stated."  <u>Careau & Co. v. Sec. Pac. Bus. Credit</u>,

9  Inc., 222 Cal. App. 3d 1371, 1395 (Ct. App. 1990).  However, this

10  rule does not apply where a plaintiff alleges that the defendant

11  acted in bad faith to frustrate the contract's actual benefits.

12  <u>See</u> <u>Celador Int'l Ltd. v. Walt Disney Co.</u>, 347 F. Supp. 2d 846, 852

13  (C.D. Cal. 2004); <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 353

14  n.18 (2000).

15    In the instant case, Shaterian has not gone beyond alleging a

16  breach of the implied and express terms of the Note and TILDS.  The

17  SAC alleges that Wells Fargo and WSB acted in bad faith by failing

18  to make clear and conspicuous disclosures concerning the monthly

19  payments sufficient to cover his interest and principal.  However,

20  these actions were presumably taken to induce Shaterian to enter

21  into the contract, not to frustrate the benefits of the contract.

22  Further, Shaterian's bad faith allegations are too vague to state a

23  plausible claim for relief.  Accordingly, the Court DISMISSES

24  Shaterian's fifth claim for breach of the implied covenant of good

25  faith and fair dealing.

26         **6.   Claim for Aiding and Abetting Fraud (Claim 6)**

27    Shaterian's aiding and abetting fraud claim is premised on

28

**United States District Court**
For the Northern District of California

1   allegations that WSB and Diablo engaged in a "joint venture" to

2   induce borrowers, including Shaterian, to enter into unfavorable

3   loans.  SAC ¶¶ 117-133.  Wells Fargo moves to dismiss this claim on

4   the grounds that: (1) it lacks particularity; (2) Wells Fargo

5   cannot be held liable for Diablo's actions; (3) the claim does not

6   identify an actionable misrepresentation; and (4) the claim is

7   preempted by TILA.  MTD at 16-19.

8        Rule 9(b) of the Federal Rules of the Civil Procedure requires

9   a plaintiff to "state with particularity the circumstances

10  constituting fraud."  This includes "an account of the time, place,

11  and specific content of the false representations as well as the

12  identities of the parties to the misrepresentations."  <u>Swartz v.</u>

13  <u>KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (citation and

14  quotations omitted).  Under California law, aiding and abetting

15  liability extends to a person who aids and abets an intentional

16  tort where that person: (1) had actual knowledge of the underlying

17  wrongful conduct, and (2) gave substantial assistance or

18  encouragement to another to so act.  <u>See</u> <u>Casey v. U.S. Bank Nat'l</u>

19  <u>Assn.</u>, 127 Cal. App. 4th 1138, 1144 (Cal. Ct. App. 2005).

20       Wells Fargo argues that Shaterian has not alleged with

21  particularity what misrepresentations Diablo made, or when and how

22  those statements were made.  The court disagrees.  Shaterian pled

23  that around August 2007 a Diablo agent, Juanita Garcia Apodaca

24  ("Apodaca"), told Shaterian that he qualified for a six percent

25  fixed rate loan that would eventually adjust to a lower rate and

26  encouraged him to sign blank documents.  SAC ¶ 129.  Shaterian

27  further alleges that these representations turned out to be false,

28

**United States District Court**
For the Northern District of California

1  as he entered into an Option ARM loan with an interest rate that

2  ultimately increased over time.  These allegations meet the

3  heightened pleading standards of Rule 9(b).[4]

4      The Court also disagrees with Wells Fargo's contention that

5  Shaterian's allegations concerning the relationship between WSB and

6  Diablo are too conclusory to state a claim for aiding and abetting.

7  MTD at 17.  Shaterian alleges that WSB and Diablo, Shaterian's

8  broker, entered into an agreement whereby WSB "dictated and pre-

9  approved" certain loan and disclosure documents which Diablo

10  provided to borrowers.  SAC ¶ 125.  Shaterian further alleges that

11  WSB was aware that these documents contained "fraudulent omissions"

12  and knew or should have known that Diablo encouraged borrowers to

13  sign blank loan documents, and that Diablo later completed these

14  loan documents with information which differed from the information

15  provided to the borrowers.  Id. ¶¶ 127-128.  Shaterian is informed

16  and believes that Diablo received "substantial remuneration" from

17  WSB for carrying out this scheme.  Id. ¶ 121.  Such allegations are

18  sufficient to establish that WSB had actual knowledge of the

19  alleged fraud and provided substantial assistance in carrying it

20  out.  See Peel v. BrooksAmerica Mortg. Corp., No. 8:11-cv-0079-JST,

21  2011 U.S. Dist. LEXIS 60618, at *22-25 (C.D. Cal. June 1, 2011).

22      Wells Fargo further argues that it cannot be held liable for

23  the actions of Diablo since loan brokers are "customarily" the

24  agents of the borrower and because lenders do not owe borrowers a

25

26  [4] Wells Fargo argues that Apodaca's representations are irrelevant
   since the "loan unambiguously discloses" an adjustable interest
27  rate.  Reply at 5.  However, Shaterian alleges that he "was
   uncertain at the time he signed the closing document - executed in
28  blank - of exactly what type of loan he was getting."  SAC ¶ 15.

**United States District Court**
For the Northern District of California

1   fiduciary duty of care.  MTD at 18.  These arguments are

2   unpersuasive and irrelevant.  Regardless of the "customary

3   relationship" between brokers, lenders, and borrowers, Shaterian

4   has specifically alleged that WSB drafted and approved loan

5   documents Diablo used to mislead borrowers and that Diablo received

6   substantial remuneration from WSB.  See SAC ¶¶ 121, 125.  These

7   allegations are sufficient to establish the elements of aiding and

8   abetting.  Further, under California law, a lender may owe a duty

9   to its borrowers where it "actively participates in the financed

10  enterprise beyond the domain of the usual money lender."  Nymark v.

11  Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (Cal. Ct.

12  App. 1991) (quotations and citation omitted).  In the instant

13  action, Shaterian has alleged that WSB stepped out of its usual

14  role as a lender by engaging in a joint venture with Diablo to

15  induce Shaterian to agree to an unfavorable loan.  See SAC ¶¶ 121,

16  125.

17      The Court also finds that Shaterian's aiding and abetting

18  fraud claim is not preempted by TILA.  As discussed above, TILA

19  only preempts state law causes of action to the extent that they

20  are predicated on allegedly false statements in TILDS or other

21  written disclosures required by TILA.  Shaterian's aiding and

22  abetting claim alleges other types of wrongful conduct, including

23  allegedly false statements made by Apodaca.

24      Accordingly, the Court DENIES Wells Fargo's motion to dismiss

25  with respect to Shaterian's sixth claim for aiding and abetting

26  fraud.

27

28

1      **7.    Claim for Violation of California Civil Code Section**

2          **2923.5 (Claim 7)**

3      California's Civil Code provides a framework for non-judicial

4 foreclosure: the lender must first record a notice of default; once

5 three months have elapsed, the lender must give notice of the

6 planned foreclosure sale. Cal. Civ. Code § 2924. Section 2923.5

7 concerns the notice of default. It requires the "mortgagee,

8 trustee, beneficiary, or authorized agent" seeking to file a notice

9 of default to first contact the borrower in person or by telephone

10 "in order to assess the borrower's financial situation and explore

11 options for the borrower to avoid foreclosure." Id. §

12 2923.5(a)(2). The notice of default may not be filed until thirty

13 days after this initial contact or after the statute's due

14 diligence requirements are satisfied. Id. § 2923.5(a)(1).

15 Further, the notice of default must include a declaration that the

16 mortgagee, beneficiary, or authorized agent has contacted the

17 borrower. Id. § 2923.5(b). During this initial contact, the party

18 seeking to file a notice of default must advise the borrower that

19 he or she has the right to request a subsequent meeting and, if

20 requested, schedule the meeting within fourteen days. Id. §

21 2923.5(a)(2). The remedy available under Section 2923.5 is the

22 postponement of a foreclosure sale until the requirements of the

23 statute have been fulfilled. Mabry v. Super. Ct., 185 Cal. App.

24 4th 208, 213 (Cal. Ct. App. 2010).

25      In the declaration filed with the October 2010 Notice of

26 Default, Wells Fargo vice president Sandra Garza ("Garza") declares

27 that Wells Fargo contacted Shaterian on March 13, 2011 as required

28

by Section 2923.5.  SAC ¶ 137; Not. of Default at 3.  Shaterian
alleges that this declaration was false and that he had not been
contacted by anyone from Wells Fargo to assess his financial
situation and discuss options, or to arrange a subsequent meeting.
SAC ¶ 138.  Shaterian asks the Court for an order declaring that
the Notice of Default is not valid and that Wells Fargo may not
proceed with foreclosure.  Id. ¶ 140.

Wells Fargo argues that Shaterian's Section 2923.5 claim
should be dismissed because the SAC shows that it complied with the
statute.  MTD at 19.  Specifically, the SAC shows that Shaterian
had multiple discussions with Kearny, a Wells Fargo representative,
concerning a loan modification between June and August 2010, over
thirty days prior to the filing of the October 2010 Notice of
Default.  See SAC ¶¶ 143-149.  However, as Shaterian argues, these
later discussions with Kearny would not cure the alleged defect in
the Garza Declaration, which states that Shaterian was contacted in
March 2010.  If, as Shaterian alleges, the Garza declaration is
false, then Wells Fargo failed to comply with Section 2923.5(b),
which requires that a notice of default include a declaration that
the "the mortgagee, beneficiary, or authorized agent" has contacted
the borrower.  Allowing a Cal-Western to file a notice of default
based on a false declaration would defeat the purpose of the
statute.

Wells Fargo also argues that Shaterian's Section 2923.5 claim
fails because, in denying Shaterian's motion for a preliminary
injunction, the Court accepted evidence submitted by Wells Fargo
supporting the veracity of the Garza declaration.  MTD at 19.  The

**United States District Court**
For the Northern District of California

1  Court disagrees.  In evaluating Shaterian's motion for a

2  preliminary injunction, the Court could consider evidence outside

3  the pleadings to determine whether Shaterian was likely to succeed

4  on the merits.  Here, the Court may only consider whether Shaterian

5  states a plausible claim for relief.  Assuming that Shaterian's

6  allegation concerning the veracity of the Garza declaration is

7  true, Shaterian states a plausible claim under Section 2923.5.

8       Finally, Wells Fargo contends that Shaterian's seventh claim

9  fails because the Court has already denied the only remedy

10  available under Section 2923.5 -- postponement of the foreclosure

11  sale.  MTD at 20.  This argument might be persuasive if the

12  foreclosure sale had already occurred.  However, there is no

13  indication that it has.  Further, although the Court denied

14  Shaterian's motion for a preliminary injunction, an injunction may

15  still issue if Shaterian is successful on the merits.

16       Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss

17  with respect to Shaterian's seventh claim for violation of

18  California Civil Code Section 2923.5.

19            **8.   Claim for Breach of Oral Contract (Claim 8)**

20       Shaterian's claim for breach of oral contract is based on

21  Kearny's alleged promise that Wells Fargo would modify Shaterian's

22  loan if he could demonstrate an income of at least $9,500 per

23  month.  SAC ¶¶ 149, 158.  Wells Fargo allegedly breached this

24  promise by rejecting Shaterian's October and November 2010 loan

25  modification applications, even after Shaterian demonstrated a

26  monthly income of $10,000 to $15,000.  Id. ¶¶ 150-51.  Wells Fargo

27  argues that Kearny's promise did not create a contract because

28

**United States District Court**
For the Northern District of California

1  Shaterian did not offer any consideration in return.  MTD at 12.

2  Shaterian responds that he offered consideration by providing Wells

3  Fargo with requested forms and access to his tax return

4  information.  MTD Opp'n at 20.  The Court agrees with Wells Fargo.

5      Under the California Civil Code, "[a] sufficient cause or

6  consideration" "is essential to the existence of a contract."  Cal.

7  Civ. Code § 1550.  Further, "a contract in writing may be modified

8  by an oral agreement supported by new consideration."  Cal. Civ.

9  Code § 1698(c).  Consideration is defined as either (1) "[a]ny

10  benefit conferred, or agreed to be conferred, upon the promisor, by

11  any other person, to which the promisor is not lawfully entitled,"

12  or (2) "any prejudice suffered, or agreed to be suffered, by such

13  person, other than such as he is at the time of consent lawfully

14  bound to suffer."  Id. § 1605.  "[I]f one of the promises leaves a

15  party free to perform or to withdraw from the agreement at his own

16  unrestricted pleasure, the promise is deemed illusory and it

17  provides no consideration."  Reyes v. Wells Fargo Bank, N.A., No.

18  C-10-01667 JCS, 2011 U.S. Dist. LEXIS 2235, at *31 (N.D. Cal. Jan.

19  3, 2011) (quoting Pease v. Brown, 186 Cal. App. 2d 425, 431 (Cal.

20  Ct. App. 1960)).

21      In the instant action, Shaterian has not pled a benefit

22  conferred or prejudice suffered.  The forms and tax returns

23  provided by Shaterian cannot constitute consideration because such

24  consideration has absolutely no value.  See Mehta v. Wells Fargo

25  Bank, N.A., 737 F. Supp. 2d 1185, 1197 (S.D. Cal. 2010).

26  Additionally, the alleged oral contract did not place any

27  conditions on Shaterian and left him free to withdraw.  Kearny

28

1  merely informed Shaterian of the conditions under which a

2  resubmitted loan modification application might be approved --

3  Shaterian was under no obligation to resubmit the application.

4      As Shaterian has not pled adequate consideration, the Court

5  DISMISSES Shaterian's eighth claim for breach of oral contract.

6      **9.   Claim for Fraud through Misrepresentation in Oral**

7           **Contract (Claim 9)**

8      Shaterian's ninth claim for fraud through misrepresentation in

9  oral contract is premised on the same conduct as his claim for

10 breach of oral contract.  The Court has already found that

11 Shaterian has failed to allege the existence of a valid oral

12 contract.  See supra section IV.A.8.  Absent a valid contract,

13 Shaterian may not state a claim for fraud through misrepresentation

14 in an oral contract.  See Newgent v. Wells Fargo Bank, N.A., NO.

15 09cv1525 WQH (WMC), 2010 U.S. Dist. LEXIS 18476, at *13 (S.D. Cal.

16 Mar. 2, 2010).  Accordingly, the Court DISMISSES Shaterian's ninth

17 claim.

18      **10.  Claim for Declaratory Relief (Claim 10)**

19     Shaterian's tenth claim seeks a declaration concerning the

20 rights and duties of the parties with respect to his first nine

21 claims.  This claim is ultimately a request for relief, and

22 Shaterian is not entitled to such relief absent a viable underlying

23 claim.  See Lomboy v. SCME Mortg. Bankers, C-09-1160 SC, 2009 U.S.

24 Dist. LEXIS 44158, at *8 (N.D. Cal. May 26, 2009).  Accordingly,

25 the Court DISMISSES Shaterian's claim for declaratory relief to the

26 extent it seeks a declaration concerning Shaterian's dismissed

27 claims, i.e., claims two, four, five, eight, and nine.

28

**United States District Court**
For the Northern District of California

B.  **Wells Fargo's Motion to Strike**

Wells Fargo moves to strike paragraphs 64, 65, 111, 116, 131, 133, and 174, all of which relate to punitive damages.  This Order only considers Well Fargo's Motion to Strike as it relates to paragraphs 131, 133, and 174 -- which concern Shaterian's claim for aiding and abetting fraud and his prayer for relief.  Paragraphs 64, 65, 111, and 116 relate to Shaterian's second and fifth claims, which are dismissed by this Order.  Accordingly, Wells Fargo's motion to strike is DENIED AS MOOT as to paragraphs 64, 65, 111, and 116.

Under California law, punitive damages are permitted where "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  As Wells Fargo is a corporate employer, Shaterian must show a Wells Fargo officer, director, or managing agent "authorized or ratified the wrongful conduct . . . or was personally guilty of oppression, fraud, or malice."  Id. § 3294(b).

In his aiding and abetting fraud claim, Shaterian alleges that the "conduct of DIABLO and WORLD SAVINGS was malicious, oppressive, and/or fraudulent."  SAC ¶ 131.  He further alleges that WSB "knew, or should have known, that DIABLO, through its agents, employees, and assigns was using [WSB's] financing, name, and goodwill in a fraudulent scheme that included breaches of fiduciary and contractual duties."  Id. ¶ 124.  Wells Fargo argues that Shaterian's punitive damages allegations should be struck because he has not alleged that an officer, director, or managing agent authorized or ratified wrongful conduct or acted with malice,

**United States District Court**
For the Northern District of California

1   oppression, or fraud.  MTS at 1-2.  In response, Shaterian argues

2   that pick-a-payment loans, which he contends are inherently

3   deceptive, would not have been made available but for the

4   authorization and ratification of high level employees at WSB.  MTS

5   Opp'n at 6-7.  He also argues WSB was put on notice of the toxicity

6   of pick-a-payment loans by lawsuits filed prior to the submission

7   of Shaterian's loan application.  <u>Id.</u> at 7.

8        Viewing the SAC in the light most favorable to Shaterian, it

9   does not appear to contain "redundant, immaterial, impertinent, or

10  scandalous matter."  <u>See</u> Fed. R. Civ. P. 12(f).  Shaterian alleges

11  that he is entitled to punitive damages for his aiding and abetting

12  fraud claim because WSB knew or should have known that Diablo

13  engaged in a "fraudulent scheme" and the conduct of Diablo and WSB

14  was malicious, oppressive, and/or fraudulent."  SAC ¶¶ 124, 131.

15  Shaterian also alleges certain facts suggesting that WSB authorized

16  or ratified his loan.  As motions to strike are generally

17  disfavored, these allegations are sufficient.  Accordingly, Wells

18  Fargo's Motion to Strike is DENIED.

19

20  **V.   <u>CONCLUSION</u>**

21       For the foregoing reasons, the Court GRANTS in part and DENIES

22  in part Wells Fargo's Motion to Dismiss.  This is the third

23  complaint filed by Shaterian.  Further, as Shaterian has stated,

24  Wells Fargo's prior motion to dismiss, though never ruled on,

25  provided guidance as to which claims required more specificity and

26  which claims were likely to be preempted.  <u>See</u> ECF No. 54 ("Joint

27  Statement") at 2.  Accordingly, the Court DISMISSES Shaterian's

28

1   second, fourth, fifth, eighth, and ninth claims WITHOUT LEAVE TO

2   AMEND.  The Court DENIES Wells Fargo's Motion to Dismiss with

3   respect to Shaterian's first, third, sixth, seventh, and tenth

4   claims.  The Court also DENIES Wells Fargo's Motion to Strike.

5

6       IT IS SO ORDERED.

7

8       Dated: November 7, 2011          

9                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

28